UNITED STATES of America, Plaintiff–Appellee,

v.

Dock RICHARDSON, Defendant–Appellant.

No. 90–3856, 90–3864.

United States Court of Appeals, Sixth Circuit.

Argued July 16, 1991.

Decided Nov. 20, 1991.

Thomas W. Miller (briefed), Winston K. Johnson (argued and briefed), Cincinnati, Ohio, for defendant-appellant.

Before KEITH, Circuit Judge, WELLFORD, Senior Circuit Judge, and GADOLA, District Judge.*

PAUL V. GADOLA, District Judge.

Defendant–Appellant Dock Richardson ("Richardson") was indicted in the District Court for the Southern District of Ohio. Richardson moved to suppress evidence obtained in the search of a storage locker and evidence obtained in the subsequent search of a second storage locker. The second search was conducted pursuant to a facially valid warrant that was based, at least in part, on the fruits of the first search. The district court denied the motion to suppress and ruled that Richardson voluntarily consented to the initial search. Finding no constitutional violation in the execution of the first search, the district court did not reach the constitutionality of the second search. A jury convicted Richardson on five counts and he pleaded guilty to a sixth count.

Richardson alleges that the trial court erred in denying the motion to suppress and in concluding that he was a leader/organizer for the purposes of sentencing. We find that Richardson was illegally arrested and that the illegal arrest tainted his consent to search. For the reasons stated more fully below, we VACATE the order denying the motion to suppress and RE-MAND for further proceedings. With respect to the trial court's finding that Richardson was a leader/organizer, we AF-FIRM. The leader/organizer issue may become moot, however, depending on the outcome of the proceedings on remand.

## I.

On May 15, 1988, agents of the Drug Enforcement Agency and the Union Township Police began an investigation into the affairs of Dock Richardson. The agents

John M. DiPuccio (argued and briefed), Office of the U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

* The Honorable Paul V. Gadola, United States District Judge for the Eastern District of Michi-gan, sitting by designation.

believed Richardson was illegally trafficking in controlled substances. Actual surveillance of Richardson began on May 26, 1988. No criminal activity was observed on that day.

The law enforcement officers began following Richardson at approximately 9:30 AM on Friday, May 27, 1988. Richardson made several stops that morning, one at the residence of co-defendant Gregory McCollum. Richardson had been staying with McCollum, a man the agents knew to be involved in the distribution of drugs. At 11:30 PM the agents followed Richardson to The Eastgate Keys Storage Facility ("Eastgate Keys"). They observed Richardson meet a man who was later identified as Waylon Harris. The two men then proceeded to locker F-69 (the first storage locker) which was maintained by Richardson. Over the next few hours, agents positioned at various points around the facility observed the two men working in and around storage locker F-69. At approximately 2:30 PM on Friday, May 27, 1988, the four law enforcement agents approached the first storage locker. As they approached, Richardson was seated in a car parked near the first storage locker. Harris was inside the first storage locker, which was blocked by his pickup truck. At this point, no criminal activity had yet been observed. The officers approached, went into the first storage locker to get Harris, and informed the men that they were the subject of a drug investigation. The four officers then asked Richardson for consent to search the first storage locker. Upon his refusal, Richardson was placed in the back seat of an unmarked police car. The officers then proceeded to question Harris out of Richardson's earshot.

At approximately 2:40 PM, Harris confessed to going on numerous trips for Richardson to transport marijuana for him. Harris then consented to a search of his vehicle. The agents searched but found nothing.

Agent Bik told Richardson of Harris's confession and informed him that if he again refused to consent to a search of the first storage locker, they would get a war-rant. Although Richardson had been evasive and deceptive in his answers and had refused consent three times at that point, he then changed his position. Richardson mistakenly assumed that the officers had already viewed the contents of the first storage locker when they went into the locker to get Harris and stated, "So you might as well go in;" and "Go ahead and search since you are going to anyway." Order denying motion to suppress at 3 (Joint App. at 33). The officers considered these statements to be consent and, at approximately 2:50 PM, they entered the first storage locker. The officers obtained no written or recorded consent to search from Richardson. No attempt was made to get a search warrant from the Batavia courthouse which was approximately fifteen minutes away and open for business at the time.

The officers found barrels containing drug residue, plastic baggies, a scale and duct tape in the first storage locker. Upon searching Richardson's truck, the officers found remains of marijuana and $4,000. The truck also had Ohio plates on the outside and Texas plates on the inside. With Harris's assistance, an additional search of the truck yielded $37,000.

After the search of Harris's car, Richardson's truck, and the first storage locker, the agents obtained a search warrant from Clermont County to search a second storage locker registered to Richardson at Eastgate Keys. The agents discovered additional contraband as a result of the second search.

On January 18, 1989, Richardson was indicted in the United States District Court for the Southern District of Ohio with violations of 21 U.S.C. §§ 841 and 846 pursuant to a twenty-seven count indictment (Case No. CR-1-89-006). Richardson failed to appear for his hearing on the motion to suppress, and on April 5, 1989, Richardson was indicted for failure to appear and other drug-related counts in Case No. CR-1-89-035. Motions to suppress evidence were filed on February 3, 1989, and October 20, 1989. The trial court denied

these motions in an order dated January 17, 1990.

At trial, Richardson was found guilty on five counts of the indictments. As previously noted, he pleaded guilty to a sixth count. He was sentenced to terms of 151 months on Count 2 (CR-1-89-35) and 60 months on each of Counts 1, 19, 26, 27 (CR-1-89-06) and 4 (CR-1-89-35), all sentences to run concurrently, and a term of 10 months on Count 1 (CR-1-89-35) to run consecutively to the others. The trial court also sentenced Richardson to three years of supervised release and imposed a $50.00 assessment on him.

Richardson appeals the order that denied his motion to suppress the evidence obtained from the search of the first storage locker and from the subsequent search warrant. Richardson also appeals the determination that he was a leader/organizer and, thus, given a four-point increase for sentencing purposes.

## II.

### A. Did the Encounter Between Richardson and the Law Enforcement Agents Constitute a Seizure?

■ As a threshold question, we must consider whether the initial encounter between the law enforcement agents and Dock Richardson constituted a seizure of Richardson. The safeguards of the Constitution, with respect to police/citizen contact, will vest only after the citizen has been seized. *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980); *United States v. Knox*, 839 F.2d 285, 289 (6th Cir.1988).

■ Not every police/citizen encounter constitutes a seizure. We agree that "voluntary cooperation of a citizen in response to non-coercive questioning [raises no constitutional issues.]" *United States v. Morgan*, 936 F.2d 1561, 1566 (10th Cir.1991).

[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.

*United States v. Flowers*, 909 F.2d 145, 147 (6th Cir.1990) (per curiam) (quoting *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)). So long as a "reasonable person would have felt free to leave the situation, no seizure has occurred within the meaning of the Fourth Amendment." *United States v. Grant*, 920 F.2d 376, 390 (6th Cir.1990) (Guy, J., concurring in part and dissenting in part).

■ Conversely, an individual is deemed seized if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Knox*, 839 F.2d at 289 (quoting *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877); *see also Royer*, 460 U.S. at 502, 103 S.Ct. at 1326 (White, J., concurring). In *Grant*, the court noted that "a Fourth Amendment seizure occurred because the agents exercised their authority in a manner which made it apparent ... that [the citizen] was 'not free to ignore the officer[s] and proceed on his way.'" *Grant*, 920 F.2d at 382 (quoting *United States v. Black*, 675 F.2d 129, 135 (7th Cir.1982), *cert. denied*, 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983)).

■ A seizure of a person occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen...." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). The Court stated in *California v. Hodari, D.*, — U.S. —, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991), that "the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." "[W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." *Michigan v.*

*Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988). Factors that may lead a reasonable person to conclude that he is not free to leave include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877.

■ In the instant case, Richardson was approached by four officers and informed that he was the subject of a drug investigation. The agents immediately asked for consent to search the automobile and the first storage locker. When Richardson declined to consent to the search, he was placed in the back of an unmarked police car. In applying the objective standard for determining whether there has been a seizure of a person, we have no doubt that if after refusing to consent to a search, a reasonable person was placed in the back of police car by law enforcement agents who had no intent to allow him to leave, that person would have believed that he was not free to leave. Therefore, we conclude that when Richardson was placed in the police cruiser, he was seized within the meaning of the Fourth Amendment.

### B. Was the Seizure of Richardson an Arrest or a Terry Stop?

Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and related cases, a type of seizure has emerged that is less than a full arrest and justified by less than probable cause. An issue arises then in determining whether any particular seizure is a *Terry* stop (investigatory detention) or an arrest.

#### i. What Constitutes a Terry Stop?

■ An investigatory detention—a brief seizure by police based on reasonable suspicion of criminal activity—is a " 'narrowly drawn' exception to the probable cause requirement of the Fourth Amendment...." *United States v. Sharpe,* 470 U.S. 675, 689, 105 S.Ct. 1568, 1577, 84 L.Ed.2d 605 (1985)

(Marshall, J., concurring in the judgment) (quoting *Pennsylvannia v. Mimms,* 434 U.S. 106, 115, 98 S.Ct. 330, 335, 54 L.Ed.2d 331 (1977)). In *Terry,* the Court held that an officer may stop an individual reasonably suspected of criminal activity, question the person briefly, and "conduct a carefully limited search of the outer clothing ... in an attempt to discover weapons...." *Terry,* 392 U.S. at 30, 88 S.Ct. at 1885.

The Court later clarified the nature of a *Terry* stop and stated that

the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.

*Berkemer v. McCarty,* 468 U.S. 420, 439–40, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (footnotes omitted).

The scope of activities during an investigatory detention must reasonably be related to the circumstances that initially justified the stop. *Sharpe,* 470 U.S. at 682, 105 S.Ct. at 1573. When actions by police exceed the bounds permitted by reasonable suspicion, the seizure becomes an arrest and must be supported by probable cause. *Dunaway v. New York,* 442 U.S. 200, 207, 99 S.Ct. 2248, 2253, 60 L.Ed.2d 824 (1979). The Supreme Court has declined to establish a litmus test to determine when a *Terry* stop becomes an arrest, leaving the lower courts to decide the issue on a case-by-case basis. *Royer,* 460 U.S. at 502, 103 S.Ct. at 1326 (White, J., concurring). In making this decision, we are to consider the scope and nature of the restraints placed on an individual's liberty. *United States v. Place,* 462 U.S. 696, 705–08, 103 S.Ct. 2637, 2643–45, 77 L.Ed.2d 110 (1983).

#### ii. Distinguishing a Terry Stop From an Arrest.

■ "It does not take formal words of arrest or booking at a police station to complete an arrest...." *United States v.*

*McCaleb,* 552 F.2d 717, 720 (6th Cir.1977). It takes simply the "deprivation of liberty under the authority of law." *Id.* The Court has considered factors such as the transportation of the detainee to another location, significant restraints on the detainee's freedom of movement involving physical confinement or other coercion preventing the detainee from leaving police custody, and the use of weapons or bodily force in distinguishing a *Terry* stop from an arrest. *See Criminal Procedure Project: Review of Federal Criminal Procedure 1989–1990,* 79 Geo. L.J. 613, 623 (1991) (collecting cases). For example in *Royer,* the Supreme Court held that the combination of factors of an airport interrogation—including confinement of the defendant in a separate airport office, retention of the defendant's ticket and identification, retrieval of the defendant's luggage without consent, and failure to inform defendant that he was free to leave—was so intrusive as to amount to an arrest. *Royer,* 460 U.S. at 500, 103 S.Ct. at 1325. The Court stated that an investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.*

In *Grant,* this court considered the following three factors in distinguishing a *Terry* stop from an arrest: (1) the conduct of the police, (2) the characteristics of the particular defendant, and (3) the physical surroundings of the encounter. *Grant,* 920 F.2d at 382. We found, however, that a *Terry* stop was not converted to an unlawful arrest when suspects were escorted voluntarily to separate rooms in the airport for questioning, because agents did not retain the detainee's tickets, told detainees they were not under arrest, and helped retrieve luggage at the detainees' request. *Id.*

In *Knox,* this court held that the test for determining whether a suspect was under arrest is whether there was a "'... restraint on freedom of movement' of the degree associated with a formal arrest." *Knox,* 839 F.2d at 291 (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)). "The test is an objective one: would a reasonable person in the defendant's position have felt that he was under arrest or was 'otherwise deprived of his freedom of action in any significant way.'" *Knox,* 839 F.2d at 291 (quoting *Miranda v. Arizona,* 384 U.S. 436, 477, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966)). In *Knox,* we concluded that because the defendants were escorted voluntarily to separate rooms in the airport for questioning, the "restraint on their freedom [was not] tantamount to a formal arrest" and did not convert the *Terry* stop into an arrest. *Knox,* 839 F.2d at 292.

iii. Was Richardson Stopped or Arrested?

■ In the order denying the motions to suppress evidence, the trial court concluded that "the further detention and questioning of the defendant until the time Harris made his statement did not violate the Fourth Amendment. It was reasonable for the officers, after retrieving Harris from inside the [first storage] locker, to secure both individuals while they conducted their investigation." To the extent that the district court held that it was reasonable to secure Richardson in the back of a police car, we disagree.

Under *Terry,* the agents were permitted to approach Richardson and ask for permission to search. The agents also were allowed to ask a moderate number of questions. After Richardson declined to consent to the search of the first storage locker and truck, the agents detained him in the back of the police car and continued to question him.

When the agents placed Richardson in the back of the police car, they went beyond the bounds of *Terry.* Placing Richardson in the police cruiser not only constituted a seizure, as was mentioned earlier, but also crossed the line into an arrest. Richardson was moved from his car to another location, and his freedom of movement was severely restricted. Agent Bik testified that Richardson was not free to leave, and if he had tried to walk away, he would have been restrained. Motion to Suppress Transcript at 18. Under the to-

tality of these circumstances, we hold that a reasonable person in Richardson's position would have believed he was under arrest.

■ A significant legal difference exists between securing a detainee and arresting a suspect. The general rule is that "'a police confinement which ... goes beyond the limited restraint of a *Terry* investigatory stop may be constitutionally justified only by probable cause.'" *Royer*, 460 U.S. at 496, 103 S.Ct. at 1323. The police must have probable cause to believe that the person has committed or is committing a crime to make a lawful warrantless arrest. *United States v. Watson*, 423 U.S. 411, 418, 96 S.Ct. 820, 825, 46 L.Ed.2d 598 (1976). After a day and a half of surveillance, no criminal activity by Richardson had been observed by the agents. Moreover, Officer McMillan's testimony indicates that no probable cause existed to obtain a search warrant for the storage shed or Dock Richardson's automobile when the conversation was initiated. The trial court held that "after obtaining Harris's confession, the agents had probable cause to search, as the facts and circumstances within their knowledge were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." Order Denying Motion to Suppress at 5 (Joint App. at 35). The arrest, however, occurred when the agents first placed Richardson in the police car, well before they obtained Harris's statement. Accordingly, Harris's statement had no effect on the legality of Richardson's arrest.

It could not be more clear that at the time of his arrest, the agents did not have probable cause to believe that Richardson had committed or was committing a crime. Accordingly, we hold that the arrest of Richardson was unreasonable and in violation of the Fourth Amendment.

## C. Did the Illegal Arrest Taint the Consent?

The government argues, and the trial court held, that Richardson voluntarily consented to the search of the storage shed and automobile. Because the trial court did not find any constitutional violation in the encounter between Richardson and the law enforcement agents, the court did not consider whether Richardson's consent to conduct the first search was tainted. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Accordingly, we now consider, *de novo*, whether the illegal arrest tainted Richardson's consent.

■ A search based upon consent may be undertaken without warrant or probable cause, and any evidence discovered during the search may be seized and admitted at trial. *Schneckloth v. Bustamonte*, 412 U.S. 218, 243, 93 S.Ct. 2041, 2056, 36 L.Ed.2d 854 (1973). If consent is given after an illegal seizure, that prior illegality taints the consent to search. *Royer*, 460 U.S. at 507, 103 S.Ct. at 1329; *United States v. Bradley*, 922 F.2d 1290, 1296 (6th Cir.1991) (" [D]efendant's consent to search was tainted by an illegal arrest under State law"); *United States v. Buchanan*, 904 F.2d 349, 355–56 (6th Cir.1990) (Since the warrantless entry of the defendant's home was not justified, his consent to search is presumed to be tainted).

■ Notwithstanding the taint of an illegal arrest, the consent may still be valid. If consent to search is given at a time that is sufficiently attenuated from an illegal arrest, the taint may be considered to have been dissipated, and evidence discovered during the search will not be suppressed. *Brown v. Illinois*, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975) (examining the application of *Wong Sun*). "The 'primary taint of the unlawful invasion' [can] be purged when the suspect's subsequent consent is the 'product of an intervening act of free will.'" *Grant*, 920 F.2d at 388. Factors to consider in determining whether the consent is sufficiently removed from the taint of the illegal arrest include the length of time between the illegal seizure and the subsequent search, the presence of intervening circumstances, and the purpose and flagrancy of the misconduct. *Brown*, 422 U.S. at 603, 95 S.Ct. at 2261.

■ Upon considering these factors, we find that the consent to search was not sufficiently attenuated from the illegal seizure to dissipate the taint of Richardson's illegal arrest. The taint was caused by the illegal arrest. In his concurring opinion in *Brown*, Justice Powell noted that "the point at which the taint can be said to have dissipated should be related, in the absence of other controlling circumstances, to the nature of that taint." *Brown*, 422 U.S. at 609, 95 S.Ct. at 2265 (Powell, J. concurring). In this regard, the nature of the taint in this case is significant: the constitutional violation was blatant. As previously noted, Richardson was placed in the back of a police car and would not have been permitted to leave. After approximately twenty (20) minutes, he consented to the search. We do not believe that the taint had dissipated after merely twenty (20) minutes of continued improper conduct. Thus, we hold that the taint of the illegal arrest vitiated Richardson's consent and that the immediate fruits of the consent should have been suppressed.

### III.

■ Since we conclude that the evidence obtained as a result of the initial search of the first storage locker should have been suppressed, we must examine Richardson's claim that the search warrant to search the second storage locker was also tainted by the illegal arrest. If the search warrant was tainted by the illegal arrest, the evidence obtained from the search warrant should also have been suppressed.

There are, however, exceptions to the fruit of the poisonous tree doctrine. If there was an independent basis supporting the search warrant, such as Harris's statement, or if the discovery of the evidence was inevitable, then it would still be properly admissible. *See Wong Sun*, 371 U.S. at 487–88, 83 S.Ct. at 417–18 (discussing independent source exception to fruit of the poisonous tree doctrine); *Buchanan*, 904 F.2d at 356–57 (discussing the inevitable discovery exception of *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377

(1983)). We express no opinion on the issues of whether there was an independent basis supporting the search warrant or whether the discovery of the evidence from the second storage locker was inevitable. There is no record relating to a determination of these issues because the trial court erroneously concluded that Richardson was not illegally arrested. Moreover, these issues were not presented to the court. Accordingly, we leave them to be addressed on remand.

### IV.

■ Sentencing decisions are to be reviewed under an abuse of discretion standard. *United States v. Castro*, 908 F.2d 85, 90 (6th Cir.1990). Moreover, in *United States v. Fuentes–Moreno*, 895 F.2d 24, 26–27 (1st Cir.1990), the court held that when the sentencing judge also presides over the trial, he is not required to recite specific facts to support findings that the defendant was a leader of a drug transaction. The court reasoned that "[t]he determination of a defendant's role in an offense is heavily dependent on the facts of the particular case.... A judge necessarily considers the circumstances of an offense and considers facts related to the crime in selecting the appropriate punishment." *Id.* at 26.

In the instant case, the trial judge also presided over the sentencing. Accordingly, in finding that Richardson was a leader/organizer it was not improper for him to fail to identify "factual support [for this classification] or [fail to make] specific reference as to why [he] had made this classification." Appellant's Brief at 12. We have reviewed the transcript of the trial and find that the sentencing judge did not abuse his discretion in finding that Richardson was a leader/organizer.

We address this issue so that in the event that the trial court sustains Richardson's conviction after determination of the independent source issue, and Richardson does not appeal that determination, an appeal need not be taken to determine this issue.

## V.

We conclude that when the agents placed Richardson in the police car after he declined to consent to the search, it was an arrest unsupported by probable cause and in violation of the Fourth Amendment. Since we hold that the illegal arrest tainted the subsequent consent by Richardson to search the first storage locker and truck, we vacate the order of the district court denying the motion to suppress and remand for further proceedings not inconsistent with this opinion.