**UNITED STATES of America,**

v.

**Jamaal B. RICHARDSON.**

No. CR–1–03–036.

United States District Court,
S.D. Ohio,
Western Division.

May 29, 2003.

Susan E. Brabenec, Sirkin, Pinales, Mezibov & Schwartz, Martin Stanley Pinales, Sirkin, Pinales & Schwartz, Cincinnati, OH, for defendant.

Robert Clarence Brichler, U.S. Department of Justice, Cincinnati, OH, for U.S.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant's Motion to Suppress (doc. 16) and United States' Response to Defendant's Motion to Suppress (doc. 18). The Court held an evidentiary hearing on May 20, 2003.

## I. BACKGROUND

On April 16, 2002, Trooper B.E. Workman of the Ohio State Highway Patrol stopped a speeding car in which Defendant was a passenger on State Route 23 in Scioto County. After discovering that the driver's license had been suspended under the Financial Responsibility Act (hereinafter "FRA"), Trooper Workman requested that Trooper T.A. Mikesh come to the location, because he knew that she was in the area. Workman noticed that the passengers in the vehicle were moving around and appeared to be nervous.

After Trooper Mikesh arrived to the scene, Mikesh and Workman approached the stopped car. Trooper Workman explained to the driver, Meyah McCrory, that she was driving under an FRA suspension. Workman took McCrory back to his patrol car where McCrory was Mirandized.

Trooper Mikesh asked the passengers, including Defendant, the left rear passenger, for identification. While checking the passengers' identification, Trooper Mikesh observed a marijuana stem on the floor mat in front of the driver's seat. After Mikesh advised the occupants that she had seen the marijuana, the right front passenger leaned over to pick it up, and Mikesh ordered him to put it down. Mikesh advised that because she had seen the marijuana, the car was going to be searched, and the occupants would be placed under investigative custody during the search. Mikesh read the *Miranda* warnings to the passengers in the car. Trooper Workman, having rejoined Mikesh after confining McCrory to his cruiser, observed the Defendant push a blue object under the arm rest in the middle of the back seat.

Trooper Workman requested that another cruiser join them at the location, because Mikesh's unit was a canine unit and

it would not be possible to secure all the passengers in Workman's cruiser. Trooper L. Spriggs arrived in a third cruiser.

The troopers asked the passengers, including Defendant, to exit the vehicle, to empty their pockets, patted them down for weapons, and placed them in two of three patrol cars at the scene. Defendant was placed in Workman's cruiser, alongside McCrory. Nothing was found on the persons of any of the passengers as a result of this pat-down.

The troopers then searched the vehicle and found marijuana seeds, a blue digital scale covered with white powder, and a marijuana stem. The troopers next asked each passenger, one-by-one, to exit the patrol cars in order to search them. The troopers found nothing on the first passenger, but found a plastic bag with a substance appearing to be crack cocaine in the shoe of the second passenger. The troopers searched Defendant next, similarly asking him to remove his shoes. Defendant removed his right shoe, but hesitated a few moments before removing his left shoe. Trooper Mikesh examined Defendant's shoes and found a plastic bag with what appeared to be crack cocaine inside Defendant's right shoe. Subsequent laboratory analysis confirmed that the substance found on Defendant was crack cocaine.

Defendant's Motion to Suppress argues that his stop, frisk, arrest, and search were unconstitutional under the Fourth Amendment, and therefore all evidence obtained on April 16, 2002, should be suppressed.

## II. DISCUSSION

### A. The Fourth Amendment

 Governmental detentions of persons, including arrests, constitute seizures, and as such must be reasonable under the Fourth Amendment. Similarly, evidentiary searches and seizures must be reasonable to be valid under the Fourth Amendment.

### 1. Jurisprudence on Seizures of Persons

There are essentially three types of encounters that can occur between a citizen and a police officer: a consensual encounter, an investigative Terry-type stop, and an arrest. See United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir.1989). A consensual encounter can occur without any suspicion or justification, while an arrest can take place only if the police have probable cause to believe the individual has committed or is committing a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The investigative stop falls on the continuum between these two, and allows for police to briefly detain a person for investigative purposes even if they lack probable cause to make an arrest. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

 To make an investigative stop, police must have reasonable suspicion supported by articulable facts that the suspect is committing or has committed a crime. Id. If the police also have a reasonable suspicion to believe that the detainee is armed and dangerous, they may also conduct a "frisk," a limited search, to ensure the detainee has no weapons. Id. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

 A traffic stop is reasonable when an officer observes a violation of the traffic code. Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).[1] Pursu-

---

1. In Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Su-

preme Court found that police officers were reasonable to stop a vehicle for failing to use

ant to a valid traffic stop, a police officer may order both the driver and the passengers out of the vehicle. *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

■ A stop or an arrest constitutes a seizure. A person is seized by a police officer "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Various courts have reached different conclusions as to how to make the determination of when an investigative stop ripens into an arrest. *See United States v. Serna–Barreto*, 842 F.2d 965, 967 (7th Cir.1988) (weighing a number of factors, including officer's intent, impression conveyed, length of stop, questions asked, search made, and concluding that the "length of time" seems to be the most important), *United States v. Quinn*, 815 F.2d 153, 160 (1st Cir.1987) (the appropriate test is a weighing of "the limited violation of the individual's privacy against opposing interests in crime prevention and detection and the police officer's safety"), *United States v. Corral–Franco*, 848 F.2d 536, 540 (5th Cir.1988) (test is whether a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest). Although there seems to be no uniform "bright line" test across the country, the Sixth Circuit has "long recognized that officers cross the line from an investigatory stop into an arrest when they place a suspect in a police vehicle for questioning."

*United States v. Butler*, 223 F.3d 368, 375 (6th Cir.2000), *see also United States v. Richardson*, 949 F.2d 851, 857 (6th Cir. 1991) ("Placing [the defendant] in the police cruiser not only constituted a seizure...but also crossed the line [from a *Terry* stop] into an arrest.")

### 2. Jurisprudence on Searches and Seizures of Evidence

■ To be reasonable under the Fourth Amendment, most searches must be pursuant to a warrant. However, there are a number of exceptions. Among those exceptions, police may conduct a warrantless search incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Police may also search a vehicle without a warrant if they have probable cause to believe it contains fruits, instrumentalities, evidence of a crime, or contraband. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Under the plain view doctrine, police may reasonably seize an item that they see in plain view, when they have probable cause to believe that the item is evidence, fruits or instrumentalities of a crime, or contraband. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

### B. Analysis

In his motion, Defendant argues that his stop, frisk, search, and arrest were all unconstitutional (doc. 16). The Court disagrees, for the reasons articulated below.

■ Defendant was a passenger in a vehicle that was speeding. The initial

---

its signals and for speeding. *Id*. After stopping the vehicle, the officers saw contraband in plain view. *Id*. The officers were justified in seizing the contraband under the plain view doctrine, *Horton v. California*, 496 U.S.

128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), and the arrest of the driver and passenger were upheld by the Court as supported by probable cause. *Id*.

stop was therefore valid and reasonable, based on a traffic violation. *Whren,* 517 U.S. 806, 116 S.Ct. 1769. Defendant's frisk turned up no contraband, and is therefore irrelevant.[2]

At the May 20, 2003 hearing, the argument narrowed to the question of validity of the search of Defendant's shoe. Defendant argued that because Trooper Mikesh had only advised him that he was under investigative custody, he was "clearly" not under arrest until after drugs were found in his shoe. Defendant argued that there was no probable cause supporting the search of his shoe, so the arrest was invalid.

■ Defendant's argument is not welltaken. The search of his shoe was justified as a search incident to a lawful arrest. *Chimel,* 395 U.S. 752, 89 S.Ct. 2034. The custodial stop had ripened into an arrest upon the discovery of controlled substances, prior to the search of Defendant's shoes. *See, e.g., United States v. Walker,* No. 94–3521, 51 F.3d 274, 1995 WL 141343 at *5, 1995 U.S.App. LEXIS 7556 at *15 (6th Cir. March 31, 1995). Contrary to Defendant's arguments, it is not dispositive at what point the troopers announced that Defendant was under arrest. Obviously, a reasonable person would not have believed under the circumstances that he was free to leave. *Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870. Here, Defendant had been confined to a squad car. Three squad cars had arrived at the scene. Defendant knew that the troopers had seen drugs in the car that he had been a passenger, that he had been *Mirandized,* and that the troopers were searching the car. After incriminating evidence had been found in the vehicle, Defendant was questioned about it while confined to the police cruiser. As a matter of law the Defendant was arrested when he was placed in the back of the patrol car at the scene of the stop. *United States v. Butler,* 223 F.3d 368, 375, *United States v. Richardson,* 949 F.2d at 857.

■ Defendant's arrest was supported by probable cause. The facts and the circumstances within the knowledge of the troopers were sufficient to warrant a reasonable officer to believe that Defendant had committed or was committing a crime. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Here, police had spotted marijuana in plain view in the vehicle. Trooper Workman observed the Defendant attempt to conceal something blue under the armrest. All of the passengers, including Defendant, appeared nervous. Taken together, this evidence supports a finding of probable cause. As such, the confinement of Defendant to the cruiser, which under *Butler* and *Richardson* constituted an arrest, was valid. The validity of the arrest was further bolstered by the subsequent discovery of the blue digital scale covered with suspicious residue. The search of Defendant's shoe was therefore valid as incident to his arrest.

### III. CONCLUSION

The Court finds the testimony of the troopers in this case to be credible, and is convinced that correct procedure was followed in conducting Defendant's arrest. The trooper's stop, frisk, search, and arrest of Defendant was reasonable and in accordance with Fourth Amendment principles. The Court does not find Defendant's arguments at the hearing on May

---

2. Defendant's frisk could only be relevant if it led the police to search Defendant's shoe. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The Court finds credible the trooper's testimony that they only proceeded to search Defendant's shoe after having found drugs in the car. Even assuming the frisk was illegal, none of the evidence in question was acquired by exploitation of that illegality.

20, 2003, nor in his Motion to Suppress Evidence, persuasive to the contrary. Therefore, the Court hereby DENIES the Defendant's Motion to Suppress (doc. 16). The Court further SETS this matter for trial on June 24, 2003.

SO ORDERED.