{¶ 26} I respectfully dissent from the majority's conclusion that the trial court erred in denying appellant's motion to suppress, for the following reasons.
 {¶ 27} As stated by the majority, the threshold issue is whether the removal of appellant's keys impermissibly exceeded the scope of a protective frisk, as authorized by Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889. To be constitutional, a patdown frisk must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby * * *."Terry, supra, 392 U.S. at 26. Accordingly, "police seizure of items that are neither weapons nor apparent contraband during a Terry patdown exceeds that doctrine's limited exception to the Fourth Amendment's prohibition on warrantless searches and seizures." United States v.Holmes (C.A.D.C, 2007), 505 F.3d 1289, 1292.
 {¶ 28} I agree with the majority that Detective Awls testimony that keys "can be used as a weapon" is insufficient to establish that he actually considered them to be a weapon. Also, there is no evidence to show that the keys or the money removed from appellant's pockets was contraband. Therefore, applying the law to the facts of this case, I concur that the keys were seized in violation of appellant's Fourth Amendment rights. However, once it is established that a constitutional violation has occurred, a defendant must also make "a prima facie showing of a causal nexus between the Fourth Amendment violation and the evidence he seeks to suppress." Holmes, supra. Using the reasoning employed in Holmes, the majority concludes that such a nexus exists in this case. I disagree. *Page 10 
 {¶ 29} In Holmes, police officers removed a set of car keys, cigarette rolling papers, and a wallet from Rondell Holmes' pocket during a patdown search. Upon checking for outstanding warrants, they found out that Holmes had a prior drug conviction, and was out on parole. The officers then pressed Holmes as to whether he had a car, and threatened him with arrest for possession of drug paraphernalia if he did not cooperate. After Holmes eventually revealed that his vehicle was parked around the corner, the officers used the keys to open the vehicle. The ensuing search yielded a gun and ammunition, concealed under the driver's seat. Holmes was arrested and charged with a parole violation.
 {¶ 30} Holmes filed a motion to suppress the gun and ammunition as the fruits of an illegal search. The trial court denied the motion, based on its conclusion that Holmes consented to the search. On appeal, the Court of Appeals for the District of Columbia, Circuit Court, reversed the trial court, after finding that the illegal discovery of the car keys led directly to the discovery of the gun and ammunition in Holmes' vehicle. Accordingly, the appellate court concluded there was a "causal nexus" between the two events, which compelled suppression of the evidence against Holmes. Holmes, supra.
 {¶ 31} In this case, unlike the scenario in Holmes, police entered appellant's place of business to execute a search warrant. When appellant asked the purpose of the search, he was told the officers were looking for marijuana and other narcotics. Appellant's keys were simply removed during a patdown search that was incident to execution of the warrant, and were placed on the counter. No evidence was presented that appellant was asked whether he had a vehicle parked outside based upon discovery of the car keys in *Page 11 
his pocket. In fact, no particular significance was apparently attached to their discovery at all, until after police searched appellant's business for approximately 15 minutes. At that point, appellant was asked to consent to a search of his residence, and he responded by inviting the officers to search his house and his vehicle.[1]
Detective Awls then picked up the keys and went outside to search appellant's truck, which was parked at the curb. Accordingly, based on a review of the record in this case, I would find that appellant has not established a causal nexus between the seizure of his keys and the search of his truck that justifies suppression of the evidence against him.[2]
 {¶ 32} In addition, I would also find that appellant voluntarily consented to the search of the truck. It is well-established that consent given after an illegal seizure is tainted by the prior illegality, unless the giving of consent is sufficiently attenuated from the illegal seizure that the taint had been dissipated. United States v.Richardson (C.A.6, 1991), 949 F.2d 851, 858. In other words, the "primary taint" is purged if the consent is the "`product of an intervening act of free will.'" Id., quoting United States v. Grant
(C.A.6, 1990), 920 F.2d 376, 388. In considering whether the consent is sufficiently removed from the taint of illegal police action, courts may consider "the length of time between the illegal seizure and the subsequent search, the presence of intervening *Page 12 
circumstances, and the purpose and flagrancy of the misconduct." Id., citing United States v. Brown (1975), 422 U.S. 590, 603, 95 S.Ct. 2254,451 L.Ed.2d 416.
 {¶ 33} As indicated above, any taint resulting from the seizure of the keys was minimal, since there is no direct connection between the discovery of the keys and Detective Awl's use of those keys to open appellant's truck. In addition, before the search commenced, appellant was advised of his Miranda rights, and was told that the purpose of the search was to look for marijuana and other narcotics. Although appellant's native language is Spanish, he appeared to understand the officers' statements, given his specific invitation to the police to search his house and his truck. Appellant was not free to leave the store during that time; however, he was not handcuffed and placed under arrest until after marijuana was found in the truck. Finally, the officers did not ask appellant for permission to search his home until after they had been searching the convenience store for 15 minutes. In response, appellant stated they could not only search his home, they could search his vehicle as well. All of these factors support the conclusion that appellant's consent to the search of the truck was voluntarily given. For these reasons, I would affirm the trial court's decision and deny the motion to suppress.
[1] Awls testified at the hearing that appellant stated: "I don't have any drugs here, * * * you can search my house, you can search my car — he [appellant] said truck."
[2] Since the relevant inquiry here is whether there is a "causal nexus" between the illegal seizure of appellant's keys and the ultimate discovery of marijuana in his truck, I consider speculation as to how the detectives would have entered the truck without having easy access to the keys to be unhelpful. *Page 1