# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
Respondent,             )        Def. I.D. # 2304000367
                        )
v.                      )
                        )
ELIJAH FOREMAN,         )
Movant.                 )

Submitted:  September 21, 2023

Decided: October 4, 2023

*Upon Defendant's Motion to Suppress*

**GRANTED**

## MEMORANDUM OPINION AND ORDER

Adam D. Windett, Esquire, 438 South State Street, Dover, DE 19901; Attorney for Movant.

Julie L. Johnson, Esquire, Deputy Attorney General, Department of Justice, 13 The Circle, Georgetown, DE 19947; Attorney for Respondent.

**KARSNITZ, R.J.**

## PROCEDURAL BACKGROUND

On May 19. 2023, Defendant Elijah Foreman ("Foreman," "Defendant" or "Movant") filed a motion to suppress from use at trial the fruits of the vehicle stop performed by an officer of the Millsboro, Delaware Police Department, including Defendant's custodial statements following the stop, and any evidence seized from Defendant's vehicle and person (the "Motion"). On June 22, 2023, the State of Delaware (the "State") filed its Response to the Motion. I held an evidentiary hearing on the Motion on September 21, 2023, during which I viewed a portion of a 50-minute video recording of the April 1, 2023 incident. Later that day, the State filed a Supplemental Argument.

This is my ruling on the Motion.

## FACTS

At the hearing on September 21, 2023, the evidence, including the testimony of Millsboro Police Officer Millner, established the following facts.

At approximately 6:49 p.m. on April 1, 2023, Officer Millner was conducting a property check of the Hub Courts Development in Kyle Circle, Millsboro, Delaware. He observed a silver Mazda Tribute on Kyle Circle. He thought he recognized the black male driver of the vehicle as someone he knew, Andrew Foreman. The driver became aware of Officer Millner's presence and stopped his travel, which Officer Millner considered suspicious. Officer Millner continued

2

his property check and the vehicle continued on its way.

Officer Millner then conducted a Criminal Justice Information Services ("CJIS") inquiry on Andrew Foreman and determined that Andrew Foreman's driver's license was suspended. Officer Millner followed the vehicle and conducted an inquiry on the vehicle's registration number. He determined that the vehicle was registered to Sandra Foreman, the mother of Andrew Foreman and Defendant. Officer Millner activated his emergency equipment to conduct a traffic stop, and the vehicle pulled into a private alley near the Millsboro Bowling Alley and came to a slow, rolling stop.

Officer Millner approached the vehicle. When he looked inside, he did not see any money, drug ledgers, drug paraphernalia, drugs, or other contraband in plain view. The driver identified himself as Elijah Foreman, Andrew Foreman's brother. Officer Millner stated in his probable cause affidavit that he was familiar with Elijah Foreman from his prior experience as a Millsboro police officer, and that he was able to positively identify him upon contact after the stop. Officer Millner asked Defendant why he was coming "from Barb's house" (Barbara Fraser, who lived at 25 Kyle Circle). When asked about the status of his driver's license by Officer Millner, Defendant stated that his license was not valid. When asked, Defendant also informed Officer Millner that there were no guns or drugs in the vehicle. Defendant further stated the vehicle had just been

3

cleaned out, but Officer Millner testified that, in his opinion, the vehicle was still messy, with Black & Mild cigars, paperwork, and zip lock bags strewn about, and this raised farther suspicions on his part.

Officer Millner returned to his vehicle and conducted a CJIS inquiry on Defendant, but was unable to determine whether his driver's license was valid. He returned to Defendant's vehicle and asked for Defendant's social security number and date of birth.

Officer Millner then asked Defendant for permission to search the vehicle, and Defendant consented to the search. Officer Millner found cocaine in the vehicle's center console during the search. When he searched Defendant's person, he found a digital scale.

Defendant was then arrested and charged with Drug Dealing -- Possession of a Tier 3 Controlled Substance and Possession of Drug Paraphernalia.[1] After the arrest, Officer Millner determined that Defendant's driver's license was suspended, and he was charged with Driving While Suspended or Revoked.[2]

---

[1] 16 *Del. C.* § 4752, 16 *Del. C.* § 4771.
[2] 21 *Del. C.* § 2756.

## ANALYSIS

## Legal Framework

The Fourth Amendment to the United States Constitution and the Delaware Constitution protect individuals from unreasonable searches and seizures.[3] A traffic stop is considered a seizure for the purposes of the Fourth Amendment.[4] In defining what constitutes a "stop," courts have adopted an objective test. A person or motor vehicle is deemed to be stopped within the meaning of the Fourth Amendment if, by means of "physical force" or a "show of authority," a reasonable person would believe that he or she was not free to leave.[5]

In responding to a motion to suppress evidence seized during a warrantless search or seizure, the State bears the burden of establishing that the challenged search or seizure was performed in a manner so as to protect the individual rights guaranteed by the United States Constitution, the Delaware Constitution and state statutes.[6] The State must persuade me that the stop, the search, the seizure of evidence, and the arrest were lawful by a preponderance of the evidence.[7]

The Fourth Amendment permits brief investigative stops, such as the

---

[3] U.S. Const. amend. IV; Del. Const. Art. I, § 6.
[4] *United States v. Arvizu*, 534 U.S. 266 (2002).
[5] *Brendlin v. California,* 551 U.S. 249, 254 (2007); *Terry v. Ohio*. 392 U.S. 1, 19 (1968).
[6] *Hunter v. State,* 783 A.2d 558, 560 (Del. 2001).
[7] *State v. Abel,* 2011 WL 5221276, at *2 (Del. Super. Oct. 31, 2011) *affd*, 68 A.3d 1228 (Del. 2012).

traffic stop in this case, when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity."[8] The "reasonable suspicion" necessary to justify such a stop "is dependent upon both the content of information possessed by police and its degree of reliability."[9] Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause.[10]

In Delaware, the court can "combin[e] objective facts with such an officer's subjective interpretation of those facts."[11] When considering the objective facts, the limited consideration of an officer's subjective thoughts allows the court to accord weight to an officer's training and experience in detecting criminal activity.[12] In other words, the objective facts are viewed through the lens of a reasonable, trained police officer.[13]

As stated above, the State has the burden of showing that the stop and

---

[8] *United States v. Cortez,* 449 U.S. 417-418 (1981).
[9] *Alabama v. White,* 496 U.S. 330 (1990).
[10] *United States v. Sokolow,* 490 U.S. 7 (1989).
[11] *Jones v. State,* 745 A. 2d 861 (Del. 1999).
[12] *Lopez-Vazquez v. State,* 956 A.2d 1287 (Del. 2008).
[13] *West v. State,* 143 A.3d 712, 716-17 (Del. 2016).

subsequent search were reasonable under the circumstances.[14] First, the stop must be justified at its inception by a reasonable articulable suspicion of criminal activity.[15]

Second, the stop and subsequent inquiry must be reasonably related in scope to the justification for their initiation.[16] A detention must be no longer than *is* necessary to effectuate the purpose of the stop.[17] An investigation of the vehicle or its occupant beyond that required to complete the purpose of the traffic stop constitutes a separate seizure that must be supported by independent facts sufficient to justify the additional intrusion.[18] With regard to the extension of traffic stops where the stop is not formally terminated by the issuance of a citation or warning, the Court in *Caldwell* held that "the legitimating *raison d'etre* [for the stop may] evaporate if its pursuit is unreasonably attenuated or allowed to lapse into a state of suspended animation."[19] "Whether a given detention is 'unreasonably attenuated' necessarily involves a fact-intensive inquiry in each case. This standard respects the State's interest in investigating suspicious conduct during a valid traffic stop, while restricting police officers' authority to employ marginally

---

[14] *Caldwell v. State,* 780 A.2d 1037, 1047 (Del. 2001).
[15] *Id.*
[16] *Id.*; *United States v. Brignoni-Ponce,* 422 U.S. 873, 880-881 (1975).
[17] *Florida v. Royer,* 460 U.S. 491, 500 (1983).
[18] *Caldwell v. State,* 780 A.2d 1037, 1047-48 (Del. 2001).
[19] *Id., at* 1048.

applicable traffic laws as a device to circumvent constitutional search and seizure requirements."[20]

If consent is given after an illegal seizure, that prior illegality taints the consent to search.[21]

Evidence obtained as a result of an illegal search and seizure is subject to the exclusionary rule and must be excluded at trial.[22]

**Reasonable Articulable Suspicion to Stop Vehicle**

In my view, there was ample evidence at the hearing to support a reasonable, articulable suspicion by Officer Millner, based on specific and articulable facts, which, combined with all rational inferences, reasonably warranted the stop of the vehicle driven by Defendant. Officer Millner, albeit mistakenly, believed the driver of the vehicle was Andrew Foreman. I do not think this mistake of fact was unreasonable. Officer Millner initially did not have a full view of the driver. He knew Andrew Foreman. Andrew Foreman and his brother Elijah Foreman shared

---

[20] *Id.*

[21] *Lopez-Vazguez v. State*, 956 A.2d 1280, 1291 (Del. 2008); *United States v. Richardson,* 949 F.2d 851, 858 (6th Cir.1991); *see Florida v. Royer,* 460 U.S. 491, 507-08 (1983) (plurality opinion) ("Because we affirm the Florida Court of Appeal's conclusion that Royer was being illegally detained when he consented to the search of his luggage, we agree that the consent was tainted by the illegality and was ineffective to justify the search.").

[22] *Weeks v. United States,* 232 U.S. 383 (1914); *Mapp v. Ohio,* 367 U.S. 643,655 (1961).

similar physical characteristics.

Officer Millner knew that Andrew Foreman had a suspended driver's license. Therefore, since he reasonably believed the driver of the vehicle was Andrew Foreman, he had a reasonable suspicion that the driver of the vehicle was committing a crime; i.e., driving with a suspended license in violation of Delaware law.

Moreover, as discussed above, in a reasonable suspicion analysis the objective facts are viewed through the lens of a reasonable, trained police officer such as Officer Millner, who established his *bona fides* before testifying at the hearing. Here, the objective facts are that Officer Millner witnessed a person, whom he reasonably thought was Andrew Foreman, driving with a suspended license in violation of 21 *Del.* C. § 2756. Viewed through the lens of Officer Millner, the fact that Defendant – and not Andrew Foreman - was the actual driver does not negate my finding of reasonable suspicion in this case. Hindsight is always 20/20, but Officer Millner testified that he did not realize Defendant was the driver until he approached him after the stop.

**Subsequent Detention of Defendant and Search of Vehicle**

However, in my view, once Officer Millner realized that the driver of the vehicle was Defendant, Elijah Foreman, and not his brother, Andrew Foreman, the

extension of the stop to conduct a further investigation was unsupported by reasonable articulable suspicion, based on specific and articulable facts, combined with all rational inferences.

Officer Millner testified at the hearing, and the State argued, that Officer Millner was not sure of the identity of the driver when he approached the vehicle, and therefore was entitled to investigate the identity of the driver further. However, Officer Millner also testified that he knew both Andrew Foreman and his brother, Defendant, and had recently worked out with Andrew Foreman at the gym. In my view, when Officer Millner saw the driver, he knew it was Elijah Foreman, and not his brother, Andrew Foreman. Nevertheless, after recognizing Elijah Foreman as the driver of the vehicle and positively identifying him based on prior knowledge, Officer Millner continued to detain Defendant despite no reasonable articulable suspicion to believe a crime had been, or was about to be committed, *by Defendant*.

When Officer Millner asked Defendant about the status of his driver's license, Defendant stated that his license was not valid. However, when Officer Millner returned to his patrol vehicle and conducted a CJIS inquiry on Defendant, he was unable to determine whether Defendant's driver's license was valid. It was only later that Officer Millner confirmed that, in fact, Defendant's license was suspended.

When Officer Millner asked Defendant whether there were guns or drugs

in the vehicle, Defendant replied "no" and stated that the vehicle had just been "cleaned out." Officer Millner testified that, in his subjective opinion, the vehicle was still messy, which created a sufficient suspicion of criminal activity in his mind to justify a search the vehicle. In my view, there was no reasonable articulable suspicion. If a messy car alone supported a reasonable articulable suspicion of criminal activity, countless messy drivers would be at risk of having their vehicles searched.

Officer Millner also testified that, based upon his training and experience, he knows that Hub Courts Development in Kyle Circle, Millsboro, Delaware, is an area of significant drug activity, especially the home at 25 Kyle Circle, where Barbara ("Barb") Fraser, a known drug dealer, lives and where Jordan Spicer, Defendant's girlfriend and the subject of a drug investigation, and Leonard Rabb, another boyfriend of Jordan Spicer who had been "busted for a lot of drugs," spend time. He testified that this was based on tips from concerned citizens. Although I give some consideration to the officer's subjective thoughts, accord weight to his training and experience in detecting criminal activity, and look at the objective facts through the lens of a reasonable, trained police officer, this factor alone is a bridge too far for me. Otherwise, any resident of this neighborhood, driving a car in his or her own neighborhood, would be under suspicion of criminal activity. Neither the

11

Fourth Amendment nor the Delaware Constitution allows for this chilling result.

Finally, the State argues that Defendant voluntarily consented to the search of the vehicle. However, as discussed above, if Defendant's consent was given after an illegal stop of the vehicle and detention of Defendant, that prior illegality taints his consent to the subsequent search and it is invalid.

## CONCLUSION

For the reasons stated above, I **GRANT** Defendant's Motion to Suppress.

**IT IS SO ORDERED.**


/s/ Craig A. Karsnitz


cc:  Prothonotary

12