**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0653n.06
Filed: September 5, 2007

Case No. 06-1751

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| BRIAN COURTNEY JOHNSON, | ) | DISTRICT OF MICHIGAN AT |
| | ) | DETROIT |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**BEFORE:** BATCHELDER and COLE, Circuit Judges, and PHILLIPS,[*] District Judge.

**THOMAS W. PHILLIPS, District Judge.** The matter before the Court involves an appeal of a criminal judgment entered following the defendant-appellant's conditional guilty plea of firearm possession. Defendant-Appellant's appeal is based on essentially two grounds: (1) the officers did not have reasonable suspicion that defendant was engaged in criminal activity to warrant an investigatory detention in violation of defendant's rights under the Fourth Amendment, and (2) the officers were not justified in searching defendant for weapons, thus violating defendant's constitutional rights guaranteed under the Fourth Amendment. Based on the totality of the circumstances, we find that the officers were justified in their actions involving both the stop and pat down of the defendant. Accordingly, we find that the motion to suppress was correctly denied,

---

[*] The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

and we affirm the decision of the district court.

## I. Background

On the morning of June 15, 2003, at 1:25 a.m., Detroit Police Officers Khistopher Richardson and Jevon Johnson were dispatched to 4388 Clements Street, in the City of Detroit, with respect to a report of gunshots being fired. The officers arrived on Clements Street at 1:35 a.m. to investigate the matter. The officers did not speak to anyone at the address given, as it did not exist; however, the officers spoke to a nearby resident, Anita Robertson, who denied that shots were fired. While the defendant asserts that the officers had concluded that no shots had been fired, the government asserts that the officers continued to investigate the shooting.

At 1:50 a.m., Officers Richardson and Johnson were called to a "hit and run" accident scene at the intersection of Dexter and West Davison to assist police officers who had previously arrived. Paramedics from Detroit Emergency Medical Services ("EMS") had been called to the accident scene approximately two minutes after Officers Richardson and Johnson had been dispatched for the "shots fired" call. When Officers Richardson and Johnson arrived at the accident scene, they found only one severely damaged and inoperable vehicle and no driver or passengers. The officers then followed the trail of auto fluids to the other car involved in the accident, which was located just a few blocks away. This vehicle was also severely damaged with a deployed airbag, a smashed windshield in a spiderweb pattern as if the driver had hit it, front end damage, and blood covering the interior. Further, the ignition had been torn out so that it could be operated without a key, indicating to the officers that the vehicle had been stolen. No driver or passengers were present. The officers were aided by information from a caller that the driver had "bailed out" of the vehicle,

abandoning it. Unfortunately, no description of the driver was provided.

Officers Richardson and Johnson then went to a nearby liquor store, D&L Party Store, located at the corner of Davison and Livernois Avenues, which was about one block away from the abandoned vehicle, to find leads as to the whereabouts of the driver. At the store, an anonymous source claimed to have observed a black male wearing dark clothes, bleeding from the head, walking east on Davison away from the D&L Party Store, that is, in the direction leading back to the scene of the hit and run accident. The officers proceeded back to Davison where they saw a black male, who was bleeding from the head and walking east, two-tenths of a mile from the accident scene. The officers testified that the male, who in fact was defendant Brian Johnson, appeared to be intoxicated, injured, and disoriented. Officer Johnson asked defendant Johnson if he was "okay." Johnson replied that "some guys jumped me." According to the government, since Johnson had injuries consistent with the evidence found in the abandoned vehicle, was walking in a high-crime area late at night in the vicinity of the accident, and appeared disoriented as well as intoxicated, the officers believed Johnson was the driver of the abandoned vehicle and decided to temporarily detain and question him regarding the hit and run incident involving a stolen vehicle. Morever, the officers detained the defendant for purposes of providing medical treatment.

The defendant was then subjected to a pat-down before being placed in the squad car to be transported back to the accident scene for investigation and medical treatment. According to the government, all suspects to be placed in the back of a patrol car are frisked for weapons in an effort to ensure officer safety pursuant to Detroit Police Department policy. When the defendant was frisked, Officer Richardson felt a heavy, hard object that he believed to be a gun. Indeed, defendant

3

was in the possession of a firearm located in his right front pant pocket.

After the defendant was transported to the accident scene, Officer Johnson frisked the defendant again and found another firearm concealed in his waistband. After the defendant refused treatment, the officers transported him to the precinct for booking. Detroit Police Lieutenant William Brown was the desk supervisor at the Tenth Precinct when the defendant arrived for booking and observed that the defendant had sustained head lacerations. After noting the injuries in the daily detail blotter, Lieutenant Brown sent the defendant to the hospital.

The defendant later confessed to being in an auto accident, sustaining a head injury as a result of the accident, and carrying two firearms. However, the defendant was not the driver of the abandoned stolen vehicle; rather, he was the driver of the vehicle that was found at the scene of the hit and run accident.

On June 27, 2003, Johnson was charged in a criminal complaint with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). A one-count indictment was returned for the same offense on July 10, 2003. Thereafter, Johnson was charged in a superceding indictment with being an Armed Career Criminal in violation of 18 U.S.C. § 924(e), as well as possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

In the course of the proceedings, Johnson filed a motion to suppress the firearms that formed the basis of the charge against him. After evidentiary hearings, additional briefing, and oral arguments, the district court entered an order denying the motion to suppress. Johnson thereafter entered a conditional plea pursuant to Fed. R. Crim. P. 11(a)(2), reserving the right to challenge the suppression issue. Johnson received 180 months' imprisonment as punishment at sentencing.

4

Johnson then filed this timely appeal.

## II. Analysis

The factual determinations in a district court's suppression order are reviewed for clear error while the application of the law to those facts is reviewed de novo. *United States v. Townsend*, 330 F.3d 438, 439 (6th Cir. 2003). Further, this court will consider the "evidence in the light most likely to support the district court's decision." *United States v. Marxen*, 410 F.3d 326, 328 (6th Cir. 2005) (quotation omitted) (punctuation altered), *cert. denied*, 410 F.3d 326 (2006).

On appeal, Johnson reasserts the arguments that he raised below. He maintains that the officers did not have a warrant, probable cause to arrest or search, or reasonable suspicion to detain or frisk him, and that all evidence, obtained after the encounter with the police, was the fruit of the "poisonous tree," that is, an unconstitutional search and seizure. Accordingly, Johnson urges the Court to reverse the district court's denial of his motion to suppress.

### A. The stop

Consistent with the Fourth Amendment, any officer may temporarily detain an individual whom he or she has reasonable suspicion, based on specific and articulable facts, to believe that the individual is, was, or is about to be, engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21 (1868); *United States v. Cortez*, 449 U.S. 411, 417 (1981). Reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (*quoting Cortez*, 449 U.S. at 417); *see United States v. Sokolow*, 490 U.S. 1, 8-9 (1989) (finding that although the facts may be consistent with innocence, all that is required to justify an

investigatory stop is that the officer's suspicion be "reasonable" and "articulable" as determined by the totality of the circumstances). Observations leading to an "inarticulate hunch" that criminal activity is afoot are insufficient to justify a detention, but reasonable suspicion requires considerably less than proof of wrongdoing by a preponderance of the evidence. *Terry*, 392 U.S. at 22; *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir.2000) (*citing Sokolow*, 490 U.S. at 7); *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir.1999). Regarding reasonable suspicion as required for Terry stops, the Sixth Circuit has stated that "the district court is at an institutional advantage, having observed the testimony of the witnesses and understanding local conditions, in making this determination," and therefore, " 'due weight' should be given to inferences drawn from facts by 'resident judges.' " *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006) (citations omitted).

The "totality of the circumstances" in this case consists of several separate pieces of information. When the officers arrived at the scene of the accident, only one severely damaged vehicle was present, and there was no sign of any driver or passengers. The officers had reasonable suspicion that persons in the accident had violated Michigan Compiled Law ("MCL") § 257.617a, which, at the time of the accident, stated:

> Sec. 617a. The driver of a vehicle who knows or who has reason to believe that he has been involved in an accident upon public or private property, when the property is open to travel by the public, resulting in injury to a person shall immediately stop his vehicle at the scene of the accident and shall remain there[.]

After locating the second vehicle a few blocks away, the officers observed the vehicle's damage and condition, which indicated that the driver's head was thrust into the windshield resulting

6

in open head lacerations, as well as indicating from the punched ignition that the vehicle was stolen. Further, officers had received an anonymous call that someone had "bailed out" of the second vehicle. At this point, the officers were looking for a potentially dangerous individual on foot, in near proximity to the abandoned vehicle, who had open head lacerations, and possibly disoriented from the impact of the collision.

The officers then received an in-person report from a citizen outside a nearby store that a black male in dark clothes, who was bleeding from the head, was walking east on West Davison. The officers located the described individual, defendant Johnson, and initiated conversation. After observing the disorientation of Johnson, the signs of intoxication, the open head lacerations, the closeness of Johnson in both time and location to the events, as well as evaluating Johnson to be lying as to the cause of his injuries, the officers believed Johnson to be: (1) the driver of the stolen car, (2) involved in the hit and run accident, (3) while driving intoxicated, and (4) making a false report as to the commission of a crime, all of which are in violation of the law, necessitating the need to drive Johnson back to the scene of the accident. The specific, articulable facts indicated that Johnson had committed at least one of the above crimes. Moreover, the time of day, the high-crime area, and the suspicious actions and condition of Johnson, support the finding that the officers had reasonable suspicion that criminal activity had occurred. *United States v. Wright*, No. 06-5164, 2007 WL 1026668, at *2 (6th Cir. Apr. 3, 2007) (Slip copy).

> In sum, we concur with the district court's reasoning, which in relevant part is as follows:
>
> In the instant case, the Court finds that given the totality of facts available to the two officers, combined with their specialized training and experience in dealing with auto accidents and bloodied individuals walking down the street at 1 a.m., and given their investigation regarding the second car which had a punched ignition, and at the D&L

7

> Party Store, permitted them "to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."

R. 40: Opinion at 6/JA 84, *citing Marxen*, 410 F.3d at 331-32). Accordingly, the officers were justified under the totality of the circumstances to stop Johnson.

### B. The pat-down

When an individual is subject to a lawful investigative detention, an officer may conduct a limited frisk or pat-down of that person for weapons if the officer has a reasonable belief that the suspect is armed and dangerous. *See Terry*, 392 U.S. at 30; *see also United States v. Strahan*, 984 F.2d 155, 158 (6th Cir. 1993) (a police officer may conduct a limited search for concealed weapons, if the officer believes that a suspect may be dangerous). The purpose of this limited search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence. *Adams v. Williams*, 407 U.S. 143, 146 (1972).

In an examination of the record, the officers did not merely suspect the defendant of fleeing the scene of the hit-and-run accident, the officers reasonably suspected the defendant of being the driver of a stolen automobile involved in a hit-and-run accident. The reasonableness of this suspicion is supported by the following facts: (1) the officers observed that the defendant's head injuries were consistent with hitting one's head against a windshield (as found in the stolen automobile); (2) the defendant asked for a ride at a liquor store across the street from the stolen vehicle; and (3) the officers stopped the defendant just two-tenths of a mile from the stolen vehicle. The officers' reasonable suspicion that the defendant was driving a stolen vehicle and that he fled the scene - combined with the officers' belief that the defendant was lying about the source of his

8

injuries, and the fact that the officers found the defendant at 2:00 a.m., in a high crime neighborhood, in close proximity in time and location to the unconfirmed (but not dismissed) shots-fired allegations - permitted the officers to infer that the defendant was armed and dangerous. Thus, the officers were justified in submitting Johnson to a pat-down search for weapons prior to placing him in the rear of the vehicle to be transported to the accident scene for investigatory and treatment purposes. It is of no consequence to our analysis that the officers later learned that the defendant was not, in fact, the driver of the stolen vehicle because the reasonable suspicion inquiry considers only facts known to the officers *at the time of the detention*. *See Terry*, 392 U.S. at 21 (asking whether "the facts available to the officer at the moment of the seizure . . . [would] warrant a man of reasonable caution in the belief that the action taken was appropriate").

The government presents a second justification for the pat-down of the defendant, that is, that a pat-down of suspects for dangerous objects before transporting them in the back seat of a patrol car was a part of proper procedure under the department's policy. For this proposition, the government claims that at least two other circuits have upheld an administrative search, which is applied uniformly and independent of whether there is reasonable suspicion that a particular transportee is armed and dangerous. *See United States v. McCargo*, 464 F.3d 192 (2nd Cir. 2006); *United States v. Abokhai*, 829 F.2d 666 (8th Cir. 1987).

Since the court finds that the totality of the circumstances justified the pat-down in that the officers had a reasonable belief that the defendant was armed and dangerous, the court declines to discuss the justification for a pat-down pursuant to a department policy standing alone for all individuals placed in a police vehicle. Although it does not appear that the Sixth Circuit has

9

specifically addressed the constitutionality of a department policy requiring pat-downs for transportees placed in the back of a patrol vehicle, the Sixth Circuit has previously indicated that the rights of citizens are to be carefully considered in detainment situations:

> Counsel may shout "officer safety" until blue-in-the-face, but the Fourth Amendment does not tolerate, nor has the Supreme Court or this Court ever condoned, pat-down searches without some specific and articulable facts to warrant a reasonable officer in the belief that the person detained was armed and dangerous. The Supreme Court has, in interpreting the Fourth Amendment, struck a balance between the justifiable concern for officer safety when confronting an individual and the substantial individual interest in being free from unreasonable intrusion. The Framers' concerns and clear intent to protect individuals from arbitrary government intrusion was enshrined in the Fourth Amendment to prevent situations such as those alleged here-officers, having no reason to fear for their safety, may not require citizens, whom they have not arrested, to stand up against gates or place their hands on police cars, and submit to searches. This has long been the law.

*Bennett v. City of Eastpointe*, 410 F.3d 810, 841 (6th Cir. 2005).

### III. Conclusion

As both the stop and pat-down were justified under the totality of the circumstances, the district court's ruling to deny the motion to suppress is affirmed.

**R. GUY COLE, JR., Circuit Judge, concurring.** I agree with the majority that we should affirm the decision of the district court. I write separately because I disagree with Part II.B of the majority's opinion. That is, I do not believe the officers had a reasonable basis to believe that Johnson was armed and dangerous. A weapons frisk unsupported by this reasonable basis typically violates the Fourth Amendment. *See, e.g.*, *Bennett v. City of Eastpointe*, 410 F.3d 810, 836 (6th Cir. 2005) ("To justify a pat-down search during a *Terry* stop the Fourth Amendment requires a reasonable belief that the suspect is armed and dangerous . . . ."). Nonetheless, I believe the limited weapons frisk of Johnson, prior to placing him in the rear of the police car for lawful transportation, was constitutionally permissible because the officers had a legitimate law-enforcement purpose for placing Johnson in the police car, and the weapons frisk was effectuated in accordance with a police-department policy designed to ensure officer safety when transporting suspects. *See United States v. McCargo*, 464 F.3d 192, 1999 (2d Cir. 2006).

**A. Reasonable, Individualized Suspicion that Johnson Was Armed and Dangerous**

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court did not adopt a bright-line rule authorizing weapons frisks in all on-the-street confrontational encounters, despite the obvious danger to police officers that inheres in these encounters. *Id.* at 27; *see also Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990). That is, before an officer effectuates a limited frisk for weapons incident to a lawful *Terry* stop, the officer must have a reasonable belief that the suspect is *both* (1) armed, and (2) dangerous. *Terry*, 392 U.S. at 30. Simply believing a suspect is dangerous, without more, is insufficient. "Even in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be

11

conducted." *Buie*, 494 U.S. at 334 n.2; *accord, e.g.*, *Bennett*, 410 F.3d at 841.

The majority contends that the officers had a reasonable, individualized suspicion that Johnson was armed because (1) Johnson was found in a high-crime area; (2) officers suspected that Johnson had fled the scene of a hit-and-run car accident; (3) Johnson's condition was "suspicious," namely, he was bloodied and disoriented; (4) officers found Johnson just two-tenths of a mile from a stolen vehicle; and (5) officers believed that there was a "possible link" between Johnson and the earlier shots-fired call. (Maj. Op. 8–9.) I cannot see how the first four reasons in any way support a reasoned basis for believing that Johnson was armed. To my mind, a bloodied, disoriented man found in a high-crime area and believed to have been involved in an car accident, even if one of the cars was possibly stolen, does not provide officers with a reasonable, individualized suspicion that the man is *armed*. *Cf., e.g.*, *United States v. Lane*, 909 F.2d 895, 900 (6th Cir. 1990) (concluding that officers reasonably believed suspect was armed and dangerous after he "twice attempted to reach into his coat pocket"); *United States v. McKoy*, 428 F.3d 38, 40–41 (1st. Cir. 2005) ("It is simply not reasonable to infer that a driver is armed and dangerous because the officers believe that he appears nervous and reaches toward the car's console when approached by police, even in a high-crime neighborhood."); *United States v. Scott*, 270 F.3d 30, 42 (1st Cir. 2001) (holding that a reasonable suspicion that a suspect was involved in a nonviolent crime (fraud) did not provide a reasoned basis for believing the suspect was armed because "[t]his logic would seem to permit a frisk on reasonable suspicion of almost any felony"); *United States v. Thomas*, 863 F.2d 622, 629 (9th Cir. 1998) ("An officer cannot simply frisk all 'pretty big' guys without more specific objective reasons why the suspect posed a risk to the safety of the officer.").

12

As for the fifth reason, if in fact there was a plausible link between Johnson and the shots-fired call, then I would agree that the officers had a reasonable, individualized suspicion that Johnson was armed. The officers' belief, however, that Johnson was involved in the nearby shooting strains credulity. The officers originally responded to a report of shots fired at 4388 Clements Street. They arrived at the scene at 1:35 am. The officers' investigation of the shots fired began and ended when they realized that the address did not exist and spoke to a neighborhood resident who denied hearing any gunshots. Fifteen minutes later, at 1:50 am, the officers left Clements Street after the police dispatcher sent them, as backup, to the scene of a car accident a half mile away. The officers cannot plausibly maintain that they were still investigating the shots-fired call when they arrived at the scene of a wholly unrelated car accident, where they were to act as backup to the primary unit that had already arrived, and where emergency medical personnel were already present. Absent any evidence or a reasonable inference that the shots-fired call and the hit-and-run accident were related, the majority's analysis would permit officers to presume that anyone found within some time period and some distance of a shots-fired call is armed and dangerous. This is too wide-sweeping a presumption. There is simply nothing here, based on specific, articulable facts, that an encounter with Johnson would lead "a reasonably prudent [officer under] the circumstances" to believe that Johnson was armed and "that [the officer's] safety or that of others was in danger." *Terry*, 392 U.S. at 27.

## B. Weapons Frisk Pursuant to Police-Department Policy

As a threshold matter, the officers were justified in placing Johnson in the back of the police car and transporting him back to the scene of the accident. The Supreme Court has recognized that, in some circumstances, police may transport a suspect a short distance in aid of a *Terry* stop, s*ee*

13

*United States v. Place*, 462 U.S. 696, 706 (1983), so long as the transport is reasonable, *see United States v. Sharpe*, 470 U.S. 675, 686–87 (1985) ("The question is not simply whether some other alternative was available, but whether the police act unreasonably in failing to recognize or pursue it."). In addition, four of our sister circuits, have specifically held that the police may transport a suspect for identification purposes as part of a *Terry* stop. *See United States v. McCargo*, 464 F.3d 192, 199 (2d Cir. 2006); *United States v. McCarthy*, 77 F.3d 522, 531 (1st Cir. 1996); *United States v. Dickson*, 58 F.3d 1258, 1263-64 (8th Cir. 1995); *United States v. Short*, 570 F.2d 1051, 1054 (D.C. Cir. 1978). Here, transporting Johnson two-tenths of a mile back to the scene of the accident furthered the legitimate law-enforcement purpose of confirming or dispelling whether Johnson was involved in the hit-and-run accident—no doubt, witnesses at the scene could identify Johnson as an occupant of one of the totaled cars, or whether he was involved in the accident at all.

The only question remaining then is whether the Fourth Amendment prohibits police from conducting a weapons frisk of a suspect, pursuant to departmental policy, prior to placing the suspect in the back of a police car for lawful transport, where the police lack a reasonable belief that the suspect is armed. I believe that the frisk here was permitted by the Fourth Amendment.

Although the Sixth Circuit has not yet addressed the issue, the Second Circuit recently held "that in cases where the police may lawfully transport a suspect to the scene of the crime in the rear of a police car, the police may carry out a departmental policy, imposed for reasons of officer safety, by patting down the person." *McCargo*, 464 F.3d at 201; *cf. United States v. Abokhai*, 829 F.3d 666, 670–71 (8th Cir. 1987) (holding that "the close proximity and limited observation of the suspect in the back seat of the patrol car," in addition to other "specific and articulable hazards," provided

14

sufficient justification for the weapons frisk). Here, as mentioned, the officers had a legitimate law-enforcement purpose for placing Johnson in the police car. Prior to placing Johnson in the police car, the officers frisked Johnson for weapons in accordance with Detroit Police Department policy requiring weapons frisks before transporting any person in a police car to ensure officer safety. Under these narrow circumstances, I believe the officers' administrative weapons frisk of Johnson was constitutionally permissible. This is not to say that such searches would be reasonable under all circumstances. *See United States v. $53,082.00 in United States Currency*, 985 F.2d 245, 248 (6th Cir. 1993) ("Fourth Amendment inquiries are fact-specific and each case must be evaluated on its own facts.").

It is this rationale that I would employ to uphold the officers' frisk of Johnson and not the grounds relied upon by the majority.