**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0247n.06
Filed: April 3, 2007

**No. 06-5164**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WILLIAM WRIGHT, JR., | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: COLE, SUTTON, and COOK, Circuit Judges.

PER CURIAM. William Wright, Jr., appeals the district court's denial of his motion to suppress evidence discovered and statements made during a traffic stop. Wright pleaded guilty—conditioned on his right to appeal the denial of this motion—to being a felon in possession of a firearm (Count 1), of ammunition (Count 2), and of a firearm and ammunition (Count 3) in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Wright argues the stop, the scope of questioning after the stop, the *Terry* search of Wright and his car, and the failure to give a *Miranda* warning were unconstitutional. For the following reasons, we affirm.

I

Early one morning, Knoxville Police Department Patrolman Ray Offenbacher was patrolling in a marked police car in an area known for drug activity, prostitution, and violent crime. He

observed a woman exit an apartment building and get into the passenger side of a car in the parking lot. He then saw the car, driven by Wright, cross the parking lot with its headlights off toward an alleyway at the rear of the building. Offenbacher drove around a corner to position himself to observe the car.

Offenbacher saw the passenger get out to open the trunk to allow another man to place a long, tubular bundle, which looked like a rifle, in the trunk. At this point, Offenbacher turned into the alleyway behind the car, the woman closed the trunk and got back in the car, and the courier began to walk away from the car. The car proceeded up the alley a short distance with its headlights off, and then the lights were turned on.

Offenbacher followed the car up the alley and, at one point, passed the courier on his right. After looking at Offenbacher, the courier started to jog away from the police car. Choosing to focus on the car, Offenbacher followed it a short distance before activating his emergency lights, stopping the car, and requesting backup. Offenbacher approached the driver's side and requested Wright's license and vehicle registration. Wright produced a Tennessee driver's license and Florida vehicle registration. Around this time, Officer Taylor arrived on the scene as backup.

Offenbacher then asked Wright what the courier had placed in the trunk; Wright acknowledged that it was a rifle. He then asked if Wright had any other weapons, and Wright said he did not. After asking Wright to get out of the car, Offenbacher patted him down and felt several hard, short, circular objects, which he recognized as ammunition (but not ammunition for a rifle) in

Wright's front pocket and removed. Asked about the ammunition, Wright said it was for a gun located at his residence.

Wright identified the courier only as "G" and denied knowing the origin or ownership of the rifle. With Wright's permission to check the rifle's serial numbers, Offenbacher opened the trunk and found a loaded, ready-to-fire SKS assault rifle with a bayonet attached.

Taylor searched the passenger compartment and discovered a loaded .380 caliber handgun, for which Wright admittedly lacked a permit, in the center console. The ammunition found in Wright's pocket matched that handgun.

After an evidentiary hearing on Wright's motion to suppress, the magistrate judge rejected his arguments and recommended denying the motion. The district court adopted the report and recommendation, and Wright appealed.

II

When reviewing a decision on a motion to suppress evidence, we review the district court's factual findings for clear error and view the evidence in the light most likely to support the district court's decision. *United States v. Suarez*, 263 F.3d 468, 476 (6th Cir. 2001). We review de novo the district court's conclusions of law. *Id.*

1.      **Constitutionality of the Stop**

We reject Wright's arguments and hold that Offenbacher had a legally sufficient basis to stop the car because he had a reasonable suspicion that criminal activity had occurred or was about to occur. *See Terry v. Ohio*, 392 U.S. 1 (1968). A reasonable suspicion is "a particularized and

objective basis for suspecting the person stopped of criminal activity. " *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quotations omitted). An officer with a reasonable suspicion "may detain the suspect briefly to investigate the suspicious circumstances." *United States v. Hurst*, 228 F.3d 751, 756-57 (6th Cir. 2000). The time of day, the high-crime area, and the suspicious actions of Wright, his passenger, and the courier all support the finding that Offenbacher had reasonable suspicion to stop and investigate.

2.    **Scope of Questioning after the Stop**

Wright also contends that the questioning after the stop was not reasonably related in scope to the justification for the stop. *See Terry*, 392 U.S. at 19; *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996). But, the record shows that Offenbacher began to ask Wright about the rifle in the trunk almost immediately after stopping him and asked his permission to check the rifle's serial numbers to determine if it had been stolen. Thus, Offenbacher's questions were directly related in scope to his reasonable suspicion that a crime had occurred. *See United States v. Burton*, 334 F.3d 514, 518 (6th Cir. 2003) ("'Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention.'" (quoting *United States v. Childs*, 277 F.3d 947, 954 (7th Cir. 2002) (en banc))).

3.    ***Terry* Frisk and Search of the Car**

Next, Wright claims that the *Terry* frisk of him was unconstitutional because the articulable and objective facts existing at the time of the frisk could not support a reasonable belief that Wright was armed and dangerous. *Pennsylvania v. Mims*, 434 U.S. 106, 111-12 (1977) (holding that a

police officer may order an individual out of his car and frisk him for weapons if there is a reasonable belief that the individual is armed and dangerous). Here, the early-morning stop occurred in an area known for violent crime, and Wright acknowledged there was a rifle in the trunk. Based on his observations and experience, Offenbacher suspected Wright of receiving a stolen firearm and expected Wright to be armed and dangerous. Thus, it was reasonable for Offenbacher to take "preventive measures to ensure that there were no other weapons within [the defendant's] immediate grasp before permitting him to reenter his automobile." *Michigan v. Long*, 463 U.S. 1032, 1051 (1983). These preventive measures include the *Terry* frisk and a search of the passenger compartment. *See, e.g., United States v. Terrell*, 95 F. App'x. 746, 747-48 (6th Cir. 2004).

Furthermore, Wright argues that even if Offenbacher had the authority to frisk Wright, he exceeded the scope of a permissible *Terry* frisk by reaching into Wright's pockets before identifying the ammunition through a pat down of Wright's outer clothing. This argument was not raised below and is therefore waived. *See, e.g.*, *United States v. Critton*, 43 F.3d 1089, 1093 (6th Cir. 1995) ("[W]e have no jurisdiction to hear appeals of suppression issues raised for the first time on appeal. . . . [A] defendant who fails to raise a specific issue as the basis for suppression has waived the right to raise that issue on appeal." (quotations and internal citations omitted)).

4.      ***Miranda* Warning**

Finally, Wright complains that in the absence of the familiar *Miranda* warning, his statements to the arresting officer should be suppressed. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Given *Miranda*'s protections concern only custodial statements, we initially determine if Wright's

statements were made while he was "in custody." *United States v. Macklin*, 900 F.2d 948, 950-51 (6th Cir. 1990).

After being placed in the back of the police car (without being handcuffed), Wright claims he was in custody, and the *Miranda* protection attached. But merely placing an individual in a police car does not automatically transform a *Terry* stop into a formal arrest. *See United States v. Bradshaw*, 102 F.3d 204, 211-12 (6th Cir. 1996). Instead, we look at the totality of the circumstances, focusing on

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police . . . .

*United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998).

Here, as the district court's findings of fact support, a reasonable person would not have considered himself "in custody," requiring the *Miranda* warning. Although Wright was not free to leave when stopped, several factors suggest he was not "in custody." The purpose of the questioning after the stop was to quickly confirm or dispel the officer's suspicion of criminal activity. In this case, Wright's evasive answers reasonably generated more suspicion, which permitted the officer to extend questioning under *Terry*. Second, the questioning occurred near an apartment complex, a non-coercive location. *See Berkemer v. McCarty*, 468 U.S. 420, 438 (1984); *see also Salvo*, 133 F.3d at 951 (parking lot of a fast-food restaurant is a non-coercive location); *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003) (location outside of a shop is non-coercive). Third, the

defendant was questioned for fewer than fifteen[1] of the twenty-four minutes between the stop and his arrest. Under the totality of these circumstances, the district court did not err by finding that Wright was not in custody when Offenbacher questioned him, and therefore, that no *Miranda* warning was required.

III

For these reasons, we affirm.

---

[1]There were stretches of time when neither the officer nor Wright spoke as they waited in the police car for those at police headquarters to determine whether Wright was a felon and whether the rifle was stolen.