NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0145n.06

No. 22-3448

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 29, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| TODDELL ALEXANDER, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: CLAY, McKEAGUE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Toddell Alexander appeals his 180-month sentence for possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2), as well as the denial of his motion to suppress statements that he claims were elicited without proper *Miranda* warnings. Because the district court properly classified Alexander as an armed career offender based on his multiple convictions for domestic violence under Ohio law, and because the district court properly found that Alexander was not in custody when he made the challenged statements, we **AFFIRM**.

## I. BACKGROUND

### A. The Traffic Stop

On February 2, 2021, Alexander was driving his car to a grocery store in Akron, Ohio, with his youngest child and the baby's mother. Akron Police Officers Mark Sember and Anthony Trimble were in the area in their patrol vehicle, saw Alexander's car, and ran its registration, which showed that Alexander was the registered owner and that his driver's license had been suspended.

A state database also showed Trimble that Akron police had stopped Alexander in the same car a few weeks earlier and found ammunition. Because they suspected that Alexander was driving with a suspended license, Sember and Trimble activated their cruiser's lights and stopped him. When the officers approached the car, Alexander was in the driver's seat, a woman was in the passenger seat, and a child sat in the back. Trimble explained that they had stopped Alexander to investigate whether he was driving with a suspended license. He asked Alexander to step out of the car and go to the police cruiser so that Trimble could investigate his license and any outstanding warrants. As Alexander was about to get out of his car, Trimble asked whether he had anything illegal on his person.

Before seating Alexander in the back of the cruiser, Trimble patted him down and asked him to confirm that he did not have anything illegal on his person. While Trimble checked for Alexander's license and warrant status, Alexander sat in the cruiser's back seat. He was not handcuffed, and he was permitted to keep his phone. Trimble later testified that, at that point, he was not arresting Alexander for driving with a suspended license.

Sember remained by Alexander's car. Per Trimble's testimony, he was concerned for Sember's safety because he thought Alexander might have a firearm in the car. His apprehension was based on the prior traffic stop where police had found ammunition in that same car and an incident Trimble had investigated about two years before involving Alexander and a "shots fired" call. So, Trimble asked Alexander about the prior traffic stop and if there was currently a gun in the car. Alexander replied that he was not sure; he sometimes had a firearm in the car and could not remember whether he had removed it, but, he told Trimble, if it was in the car, it would be under one of the front seats. Trimble did not provide a *Miranda* warning during this questioning.

Trimble subsequently found a pistol under the driver's seat of Alexander's car. He then read Alexander his *Miranda* rights because he planned to ask some questions about the firearm, and eventually informed Alexander that he was under arrest for possessing the firearm. Alexander was charged with unlawful possession of a firearm, knowing that he had been previously convicted of a felony criminal offense, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2).

## B. Suppression Hearing

During Alexander's ensuing prosecution, his attorney moved to suppress the statements Alexander made while seated in the cruiser during the traffic stop, before Trimble recovered the gun, on the basis that he had been in custody when he was questioned and should have been informed of his *Miranda* rights.[1] At the suppression hearing, Trimble acknowledged on cross-examination that, if someone is stopped while driving with a suspended license, that person is generally not free to leave during the investigation to determine whether that offense is arrestable. Trimble also agreed that, when Alexander was seated in the back of the cruiser, he could not open the car door from the inside and was not free to leave.

Applying the framework of *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998), the district court found that, although Alexander was seated in a police car and unable to leave the vehicle, the questioning was brief and conducted to ensure officer safety, Trimble's tone was friendly and conversational (he did not exert undue coercive pressure), and the conversation lasted only two minutes or so. And, after the firearm was recovered, Trimble read Alexander his *Miranda* rights and arrested him with no improper questioning before doing so. The district court concluded

---

[1] Alexander also unsuccessfully argued that the traffic stop was not supported by reasonable suspicion, but he does not raise this argument on appeal.

that Alexander was not in custody for purposes of *Miranda* when he was initially questioned, and therefore denied Alexander's suppression motion.

### C.     Plea and Sentencing Hearing

Alexander entered into a plea agreement on January 19, 2022, which contemplated that his prior felony convictions might qualify him for an enhanced penalty under 18 U.S.C. § 924(e) (the Armed Career Criminal Act, or ACCA) and the application of the Sentencing Guidelines' associated armed career criminal enhancement, USSG § 4B1.4. Alexander retained the right to appeal the district court's determination of his criminal history category and Guidelines range, as well as the denial of his suppression motion.

The Presentence Investigation Report (PSR) generated for Alexander identified four prior felony convictions for crimes of violence as defined by the Guidelines: aggravated robbery and felonious assault convictions from 2005, and two felony domestic violence convictions under Ohio Rev. Code § 2919.25(A) from 2011 and 2013. Applying the armed career criminal sentencing enhancement, Alexander's offense level was calculated as 33 and his criminal history category as V. Alexander objected to the PSR's conclusions, arguing, as relevant here, that the Ohio domestic violence statute was too broadly worded for his convictions to qualify as a crime of violence for ACCA purposes.

At sentencing, the court rejected Alexander's argument. Citing *United States v. Gatson*, 776 F.3d 405 (6th Cir. 2015), *United States v. Solomon*, 763 F. App'x 442 (6th Cir. 2019), and *United States v. Mickel*, No. 21-3561, 2022 WL 1100459 (6th Cir. Apr. 13, 2022), *cert. denied* (2022), the court concluded Sixth Circuit precedent established that Alexander's convictions "under [Ohio Rev. Code §] 2919.25(A) are categorically violent felonies for purposes of the Armed Career Criminal Act" and "crimes of violence for [G]uideline purposes." R. 50, Sentencing

Hr'g Tr., PageID 369-70. The district court sentenced Alexander to 15 years' imprisonment, the mandatory minimum sentence for a conviction under 18 U.S.C. § 922(g) based on Alexander's four previous convictions for violent felonies. This timely appeal followed.

## II. ANALYSIS

### A. Armed Career Offender Classification

Alexander was twice convicted under Ohio law for "knowingly caus[ing] or attempt[ing] to cause physical harm to a family or household member." Ohio Rev. Code § 2919.25(A). He challenges the district court's conclusion that those prior convictions constituted ACCA violent felonies. We review such determinations de novo. *Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019).

In 2015, we held that a conviction under Ohio Rev. Code § 2919.25(A) categorically qualifies as an ACCA violent felony. *Gatson*, 776 F.3d at 411. The ACCA covers any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another[,]" 18 U.S.C. § 924(e)(2)(B)(i)—*i.e.*, "*violent* force . . . capable of causing physical pain or injury to another person," *Johnson v. United States*, 559 U.S. 133, 140 (2010). Citing the ACCA's "elements" clause, we explained in *Gatson* that knowingly causing, or attempting to cause, physical harm to a family or household member requires "to some extent, by definition," the use of force "capable of causing physical injury or pain to another[.]" 776 F.3d at 410-11 (quoting *Johnson*, 559 U.S. at 140).

Alexander acknowledges, as he must, that *Gatson* is this Circuit's "definitive" case on Ohio domestic violence offenses as ACCA predicates. Nevertheless, he argues that we should "revisit" its holding for two reasons. First, *Gatson* was decided before the ACCA's residual clause was

held unconstitutional,[2] and Alexander claims that the *Gatson* opinion did not specifically identify whether its conclusion was based on the ACCA's elements or residual clause. Second, he argues that *Gatson* failed to acknowledge that § 2919.25(A)'s "physical harm" requirement has a broader definition than "physical force" as defined in *Johnson*, and an even broader definition than "physical force" as defined in *United States v. Castleman*, 572 U.S. 157 (2014), which analyzed that same phrase "for purposes of a different provision, namely, 18 U.S.C. § 922(g)(9), which bars possession of a firearm by any person convicted of a 'misdemeanor crime of domestic violence.'" *Gatson*, 776 F.3d at 411. Alexander suggests that *Castleman* is an acknowledgment that domestic violence offenses, "as misdemeanor battery offenses," should not be analyzed under the *Johnson* framework for physical force.

Alexander's first argument misreads *Gatson*'s discussion of domestic violence convictions under Ohio law, which began by reciting the elements clause and defining physical force. 776 F.3d at 410. Then, after applying *Johnson*'s definition of physical force to § 2919.25(A), *Gatson* distinguished *Castleman*'s interpretation of physical force. *Id.* at 410-11. *Gatson* addressed the elements clause, not the residual clause.

As for Alexander's second argument, we note that his domestic violence convictions were felonies, not misdemeanors, so his *Castleman* comparison is inapposite. *See Johnson*, 559 U.S. at 141-42. But more generally, we cannot overrule *Gatson*. Without an inconsistent decision from the Supreme Court that requires modifying a panel decision, a prior published panel decision can be overruled only by the court sitting en banc. *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009). Alexander identifies no change in controlling authority. Like other panels, we

---

[2] *See Johnson v. United States*, 576 U.S. 591, 596-97 (2015).

conclude that we are bound by *Gatson*, and Alexander's domestic violence convictions qualify as violent felonies. *See Solomon*, 763 F. App'x at 445; *United States v. Melendez-Perez*, No. 20-3925, 2021 WL 3045781, at *3 (6th Cir. July 20, 2021); *Mickel*, 2022 WL 1100459, at *2; *United States v. Mitchell*, No. 21-3896, 2022 WL 12230276, at *3 (6th Cir. Oct. 21, 2022). The district court therefore properly classified Alexander as an armed career offender and properly applied the relevant Guidelines enhancement.

### B.      Custody for *Miranda* Purposes

Alexander next argues that the district court erred in determining that he was not in custody for *Miranda* purposes when he was seated in the back of the police cruiser and asked about the presence of a weapon in his car. When reviewing a district court's decision regarding a motion to suppress, we review factual findings for clear error and legal conclusions de novo. *United States v. Evans*, 581 F.3d 333, 340 (6th Cir. 2009). Whether a person is "in custody" for *Miranda* purposes is a mixed question of law and fact that is also reviewed de novo. *United States v. Levenderis*, 806 F.3d 390, 399 (6th Cir. 2015).

Law enforcement officials must advise a person of their *Miranda* rights before engaging in "custodial interrogation." *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). "In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of 'the objective circumstances of the interrogation,' a 'reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave.'" *Howes v. Fields*, 565 U.S. 499, 509 (2012) (cleaned up) (first quoting *Stansbury v. California*, 511 U.S. 318, 322-23 (1994) (per curiam), then quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). Courts examine "all of the circumstances surrounding the interrogation," including the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints

during the interview, and the release of the interviewee at the end of the questioning. *Id.* (quoting *Stansbury*, 511 U.S. at 325); *see United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010) (identifying similar factors for courts' consideration and citing *Salvo*, 133 F.3d at 950).

Alexander's primary contention is that the initial traffic stop's objective was complete once his license had been run and confirmed to be suspended. He argues that Trimble's questions about the presence of a firearm came afterward and were unrelated to the traffic stop's purpose, thus converting the stop into an independent investigation. Alexander analogizes his circumstances to those of *United States v. Whitley*, 34 F.4th 522 (6th Cir. 2022), where we held that police questioning exceeded the scope and duration of a traffic stop based on traffic violations after officers saw a scale in the driver's lap and affirmatively decided to investigate the possibility of narcotics sales or possession. *Id.* at 530-31. But unlike the *Whitley* officers, Trimble asked Alexander about the prior traffic stop and his firearm while or just after retrieving information about Alexander's license and registration from the database. The questions "d[id] not measurably extend the duration of the stop"; they occurred while it was happening. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015); *United States v. Howard*, 815 F. App'x 69, 76 (6th Cir. 2020). *Cf. Whitley*, 34 F.4th at 527, 530-31 (questions after officers "abandoned their investigation of the traffic violation" exceeded scope of traffic stop).

More broadly, we find no error with the district court's analysis as to whether Alexander was in custody for *Miranda* purposes. As in *United States v. Wright*, 220 F. App'x 417 (6th Cir. 2007), Alexander was placed in the back of a police vehicle without handcuffs, and the questioning lasted only a couple of minutes. *Id.* at 421; *see Salvo*, 133 F.3d at 951; *Howard*, 815 F. App'x at 79. Especially important to our analysis is that Trimble's inquiries "address[ed] the traffic violation that warranted the stop . . . and attend[ed] to related safety concerns." *Rodriguez*, 575

U.S. at 354; *see also United States v. Everett*, 601 F.3d 484, 495 (6th Cir. 2010) ("[O]fficers conducting a traffic stop may inquire about dangerous weapons."), *abrogated on other grounds by Rodriguez*, 575 U.S. at 353, 356-67. Under the totality of these circumstances, the district court did not err by finding that no *Miranda* warning was required when Trimble initially questioned Alexander.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Alexander's sentence and the district court's order denying his November 14, 2021 motion to suppress.